**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Southern Insulation, Inc., through its Receiver, Peter D. Protopapas,<br><br>                                         Plaintiff,<br><br>     vs.<br><br><br>OneBeacon Insurance Group, Ltd. (f/k/a White Mountains Insurance Group, Ltd., f/k/a CGU Insurance Company, f/k/a Commercial Union Corporation, f/k/a General Accident Insurance Company of America); OneBeacon Insurance Group LLC (n/k/a Intact Insurance Group USA LLC); R.V. Chandler & Associates, Inc.; Chandler Rental Properties, Inc.; Thomas S. Chandler; Jean B. Ownbey, as Trustee of the Thomas S. Chandler, Sr. Living Trust u/d 4/06/06; Gene N. Norville; the South Carolina Property and Casualty Insurance Guaranty Association; Trebuchet US Holdings, Inc.; Trebuchet Investments Limited; Trebuchet Group Holdings Limited (f/k/a Armour Group Holdings Limited); Brad S. Huntington, individually; and John C. Williams, individually.<br><br>                                         Defendants. | Civil Action No: 3:22-cv-01308-MGL<br><br><br><br><br>**TREBUCHET INVESTMENTS LIMITED, TREBUCHET GROUP HOLDINGS LIMITED (F/K/A ARMOUR GROUP HOLDINGS LIMITED), AND TREBUCHET US HOLDINGS, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

PLAINTIFF'S FACTUAL ALLEGATIONS...........................................................................2

STANDARD OF REVIEW .....................................................................................................4

ARGUMENT ..........................................................................................................................5

I.    PLAINTIFF'S CLAIMS IMPERMISSIBLY INTRUDE UPON THE EXCLUSIVE
      AUTHORITY OF BEDIVERE'S LIQUIDATOR. ................................................5

   A.   Because Pennsylvania and South Carolina are "reciprocal states," South Carolina
        courts must defer to Pennsylvania's liquidation process. .....................................6
   B.   The March 2021 Liquidation Order grants the Liquidator exclusive authority to
        pursue any and all claims on behalf of Bedivere and its creditors.......................8
   C.   Plaintiff's claims against the Trebuchet Corporate Defendants intrude upon the
        exclusive authority of Bedivere's Liquidator. ....................................................9
      i.    Each of Plaintiff's claims against the Trebuchet Corporate Defendants are
            derivative of harm to Bedivere and/or common to all creditors....................10
      ii.   Plaintiff's claims intrude on the Liquidator's exclusive authority and must be
            dismissed. ...................................................................................................12

II.   THIS COURT LACKS PERSONAL JURISDICITION OVER THE TREBUCHET
      CORPORATE DEFENDANTS. ........................................................................15

   A.   Plaintiff Does Not Allege Any Facts Establishing Personal Jurisdiction Over the
        Trebuchet Corporate Defendants. ....................................................................15
   B.   Plaintiff's Alter Ego-Related Claims Do Not Establish Personal Jurisdiction Over
        the Trebuchet Corporate Defendants. ...............................................................16

III.  BEDIVERE, THROUGH ITS LIQUIDATOR, IS AN INDISPENSIBLE PARTY
      UNDER FEDERAL RULE OF CIVIL PROCEDURE 19.................................19

CONCLUSION.....................................................................................................................22

## **TABLE OF AUTHORITIES**

### **Cases**

*A.P.I., Inc. v. Home Ins. Co.*, 706 F.Supp.2d 926 (D. Minn. 2010)................................. 13

*Avikian v. WTC Fin. Corp.*, 98 Cal. App. 4th 1108 (Cal. App. 4th 2002).................................... 12

*Bailey v. Deutsche Bank Trust Co.*, No. DKC 13–0144, 2013 WL 2903498 (D. Md. June 12, 2013) .................................................................................................................................. 20

*Barnhardt Marine Ins., Inc. v. New England Intern. Sur. of America, Inc.*, 961 F.2d 529 (5th Cir. 1992) ................................................................................................................................ 12

*Bartfield v. Murphy*, 578 F. Supp. 2d 638 (S.D.N.Y. 2008) .......................................................... 21

*Belimed, Inc. v. Bleecker*, No. 2:22-cv-00891, 2022 WL 939819 (D.S.C. Mar. 29, 2022).......... 15

*Boedeker v. Rogers*, 746 N.E.2d 625 (Ohio App. 8th Dist. 2000)........................................ 12, 15

*Brooklyn Union Gas Company v. Century Indemnity Company*, No. 403087/2002, 2005 N.Y. Slip Op. 30325 (N.Y. Sup. Ct. Jan. 10, 2005) ....................................................................... 14

*Builder Mart of Am., Inc. v. First Union Corp.*, 349 S.C. 500, 563 S.E.2d 352 (Ct. App. 2002) 17

*Christian World Adoption, Inc. v. Hawley & Assocs., LLC*, No. 2:12–cv–2126, 2012 WL 13005827 (D.S.C. Nov. 20, 2012) .......................................................................................... 15

*Consolidated Edison Company v. American Home Insurance Company*, No. 600527/01, Slip Op. (N.Y. Sup. Ct. Mar. 29, 2005) ............................................................................................... 14

Corcoran v. Frank B. Hall & Co., Inc., 149 A.D.2d 165 (N.Y. App. Dep't 1989)....................... 12

*Drury Dev. Corp. v. Foundation Ins. Co.*, 380 S.C. 97, 668 S.E.2d 798 (2008)................... 16, 18

*Essex Ins. Co. v. Miles*, No. 10–3598, 2010 WL 5069871 (E.D. Pa. Dec. 3, 2010)..................... 18

*Fancy That! Bistro & Catering, LLC v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-2382, 2021 WL 4804974 (D.S.C. Oct. 14, 2021) ............................................................................................ 17

*Farmer v. Monsanto Corp.*, 353 S.C. 553, 579 S.E.2d 325 (2003) .............................................. 17

*Four Star Ins. Agency, Inc. v. Hawaiian Elec. Indus., Inc.*, 974 P.2d 1017 (Hawai'i 1999).. 12, 14

*Gunvor SA v. Kayablian*, 948 F.3d 214 (4th Cir. 2020) .......................................................... 19, 21

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211 (4th Cir. 2019) ...................................... 4

*J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d 534 (D.S.C. 2020) ..................... 4, 16, 17

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337 (D. Del. 2001) ................... 20

*Kelly v. Linn*, No. 20-cv-00334, 2021 WL 4198392 (N.D. Okla. Sept. 15, 2021) ...................... 20

*Kinney v. Bartholomew*, No. 5:20-cv-5083, 2020 WL 4760152 (W.D. Ark. Aug. 17, 2020)...... 21

*Koken v. Fidelity Mut. Life Ins. Co.*, 803 A.2d 807 (Pa. Commw. 2002)................................. 9, 14

*Matter of Liquidation of Am. Mut. Liability Ins. Co.*, 632 N.E.2d 1209 (Mass. 1994) ............... 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246 (4th Cir. 2000) .................................................................................................................................................. 20

*Oakley v. Coast Professional, Inc.*, No. 1:21-00021, 2021 WL 4806730 (S.D. W.Va. Oct. 14, 2021) ....................................................................................................................................... 18

*OneCommand, Inc. v. Beroth*, No. 1:12–cv–471, 2012 WL 3755614 (S.D. Ohio Aug. 29, 2012) .................................................................................................................................................. 20

*Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. 640, 817 S.E.2d 273 (2018) ............................ 17

*Receiver for Rex Venture Group, LLC v. Banca Comerciala Victoriabank SA*, 843 Fed. App'x 485 (4th Cir. 2021)................................................................................................................... 15

*Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218 (4th Cir. 2009)........................................ 4

*Roper v. TAP Pharm. Prods., Inc.*, No. 6:11–2204, 2012 WL 2974912 (D.S.C. Jul. 20, 2012). 17

*Salley v. Heartland-Charleston of Hanahan, SC, LLC*, 2:10–cv–00791, 2010 WL 5136211
(D.S.C. Dec. 10, 2010) ............................................................................................... 17
*Schiff v. ZM Equity Partners, LLC*, No. 19-cv-4735, 2020 WL 5077712 (S.D.N.Y. Aug. 27,
2020) ......................................................................................................................... 21
*SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015) ..................................... 18
*Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915 (4th Cir. 1999).......... 4, 19
*Toney v. SSC Sumter East Operating Co., LLC*, No. 3:19-3226, 2020 WL 12744577 (D.S.C. Apr.
29, 2020) ................................................................................................................... 17
*Tribune Co. v. Swiss Reinsurance Am. Corp.*, No. 02 C 4772, 2003 WL 22282465 (N.D. Ill.
Sept. 30, 2003) .......................................................................................................... 21
*Victoria Select Ins. Co. v. D. Ortiz Co., Inc.*, No. 16-cv-165, 2016 WL 9308330 (E.D. Va. May
26, 2016) ................................................................................................................... 20
*Williams v. Northwestern Sec. Life Ins. Co.*, 307 S.C. 46, 415 S.E.2d 809 (1992) ...................... 8
Wright v. Waste Pro USA Inc., No. 2:17-CV-02654, 2019 WL 3344040 (D.S.C. July 25, 2019)
.................................................................................................................................. 17

## Statutes

40 P.S. § 221.1 ................................................................................................................. 6
40 P.S. § 221.23 ............................................................................................................... 7
40 P.S. § 221.26 ............................................................................................................... 7
40 P.S. § 221.28 ............................................................................................................. 13
40 P.S. § 221.55 ............................................................................................................... 7
S.C. Code Ann. § 36-2-803 ...................................................................................... 15, 16
S.C. Code Ann. § 38-27-10 ............................................................................................... 7
S.C. Code Ann. § 38-27-400 ............................................................................................. 7
S.C. Code Ann. § 38-27-430 ............................................................................................. 7
S.C. Code Ann. § 38-27-930 ............................................................................................. 7
S.C. Code. Ann. § 38-27-30 .............................................................................................. 7

## Rules

Rule 12(b)(2), Fed. R. Civ. P. ........................................................................................... 4
Rule 12(b)(6), Fed. R. Civ. P. ........................................................................................... 4
Rule 12(b)(7), Fed. R. Civ. P. ..................................................................................... 4, 19
Rule 19, Fed. R. Civ. P. ............................................................................................... 1, 19

## Other Authorities

1 Couch on Ins. § 5:12 (2021) .......................................................................................... 5
1 Couch on Ins. § 5:17 (2021) ...................................................................................... 5, 6
18 Corpus Juris Secundum, Corporations § 39 (2022) ...................................................... 17

## **INTRODUCTION**

Through this suit, Plaintiff Southern Insulation, Inc. ("Southern"), through its Receiver, Peter D. Protopapas ("Plaintiff"), attempts to do what many creditors of insolvent insurers only dream of: skip past the statutory liquidation process and secure direct access to the insurer's assets. This is not simply procedurally improper—though, of course, it *is* improper—it is also inequitable. Taken at face value, each of Plaintiff's claims is predicated on purported injuries to Bedivere Insurance Company in Liquidation ("Bedivere"), not Plaintiff. Those claims belong to Bedivere's Liquidator. To the extent *Plaintiff* can claim injury, it is merely the byproduct of Bedivere's insolvency and thus indistinguishable from the injuries sustained by Bedivere's other creditors and policyholders. Those claims, too, are the Liquidator's to assert. As a result, allowing Plaintiff's suit to proceed will only frustrate the orderly and equitable distribution of Bedivere's assets and, by extension, a statutory liquidation framework dependent on interstate cooperation, comity, and reciprocity.

Even if this were not the case, however, Plaintiff's claims against Trebuchet Investments Limited ("Trebuchet Investments"), Trebuchet Group Holdings Limited (f/k/a Armour Group Holdings Limited) ("Trebuchet Group"), and Trebuchet US Holdings, Inc. ("Trebuchet US") (collectively, "the Trebuchet Corporate Defendants") would still require dismissal. First, Plaintiff's reach exceeds South Carolina's jurisdictional grasp. His Second Amended Complaint ("SAC") establishes no colorable basis for personal jurisdiction over any of the Trebuchet Corporate Defendants, none of whom are alleged to have any direct contact with the forum. Second, although Plaintiff asserts claims that implicate Bedivere's rights, obligations, and assets, neither Bedivere nor its Liquidator is a party to this suit. This failure to join an indispensable party violates Federal Rule of Civil Procedure 19. For each of these reasons, dismissal is warranted.

## PLAINTIFF'S FACTUAL ALLEGATIONS

Southern was a South Carolina corporation, incorporated in 1967, with its principal place of business in South Carolina. *See* SAC, Docket No. 1-1, at ¶ 22. In or around December 1991, faced with a wave of asbestos lawsuits by plaintiffs "allegedly exposed to or harmed by asbestos by Southern's conduct" over the prior quarter-century, the company was administratively dissolved. *Id.* at ¶¶ 23-24. Plaintiff alleges that, at the time of its dissolution, Southern was insured under a policy written by Potomac Insurance Company ("Potomac"), covering general liability, defense, and indemnity. *Id.* at ¶ 27. Although Plaintiff states that he "has evidence that establishes the terms of the policies" between Southern and Potomac, those terms are not identified in the SAC. *Id.* at ¶ 33. In 2019, nearly thirty years after Southern's dissolution, Peter D. Protopapas was appointed as its receiver by Hon. Jean H. Toal. *Id.* at ¶ 1.

Defendant Trebuchet US is a business corporation incorporated under the laws of Delaware with a principal place of business in Philadelphia, Pennsylvania. *Id.* at ¶ 13. It is a 100% owned subsidiary of Trebuchet Investments. *Id.* Trebuchet Investments and Trebuchet Group are both organized under the laws of Bermuda. *Id.* at ¶¶ 14-15.

According to Plaintiff, in the intervening decades between Southern's dissolution and Protopapas' appointment as receiver, Potomac went through a number of changes, including its name. *Id.* at ¶ 29. By 2014, Plaintiff alleges, Potomac had been renamed "OneBeacon Insurance Company" and existed as the "direct or indirect wholly owned subsidiary" of an unnamed "OneBeacon" entity. *Id.* In December 2014, OneBeacon Insurance Company was sold to Trebuchet US. *Id.* Not long after its sale, OneBeacon Insurance Company became Bedivere. *Id.*

Much of Plaintiff's SAC addresses actions (including "asset stripping") allegedly taken by "OneBeacon" toward OneBeacon Insurance Company in the years prior to its sale to Trebuchet US. Plaintiff does not allege that the Trebuchet Corporate Defendants, individually or together,

2

played any role in OneBeacon's allegedly illicit activities. *Id.* at ¶¶ 35-59. By contrast, Plaintiff's allegations against the Trebuchet Corporate Defendants involve events occurring approximately six years later: the Commonwealth-regulated and Commonwealth-approved merger between Bedivere and three other insurers, Employers' Fire Insurance Company ("EFIC"), Lamorak Insurance Company ("Lamorak"), and Potomac Insurance Company ("Potomac II"), in 2020. *Id.* at ¶¶ 56, 61-65.[1] As Plaintiff acknowledges, Bedivere's merger was submitted to the Pennsylvania Insurance Department for approval and its application was publicly noticed in the Pennsylvania Bulletin. *Id.* at ¶¶ 66-68. The Department subsequently approved the merger on December 9, 2020. *Id.* at ¶ 75.

According to Plaintiff, the merger left Bedivere undercapitalized. *Id.* at ¶¶ 74, 76. When Lamorak faced a significant asbestos-related judgment three months after the merger, Bedivere was rendered insolvent. *Id.* at ¶¶ 76-78. On February 25, 2021, the respective boards of Bedivere and Trebuchet US, its sole shareholder, unanimously consented to entry of an order of liquidation. *Id.* at ¶ 79. On March 2, 2021, Pennsylvania Insurance Commissioner Jessica Altman petitioned the Commonwealth Court for an Order of Liquidation. *Id.* Nine days later, on March 11, the petition was granted. *Id.* at ¶ 80.

Plaintiff's claims against the Trebuchet Corporate Defendants are predicated entirely on this merger and Bedivere's subsequent liquidation. He asserts that the additional obligations arising from Bedivere's merger overwhelmed its reserves, resulting in Bedivere's liquidation and a failure to pay policyholders' claims. *Id.* at ¶¶ 81, 88. Plaintiff does not allege that *any* Trebuchet Corporate Defendant, *at any time*, directed *any* action at Southern individually and/or specifically.

---

[1] Although the SAC refers to "asset stripping" in the heading to allegations against the Trebuchet Corporate Defendants, the subsequent paragraphs do not allege the Trebuchet Corporate Defendants actually "stripped" any assets. *See* SAC, at ¶¶ 60-90.

## STANDARD OF REVIEW

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226–27 (4th Cir. 2019). "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction,'" but "need not 'credit conclusory allegations or draw farfetched inferences.'" *J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d 534, 545 (D.S.C. 2020) (citations omitted).

To survive a Rule 12(b)(6) challenge, a plaintiff's factual allegations must be substantial enough "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In determining whether this standard has been met, a court must construe the "factual allegations in the non-moving party's favor" and "treat them as true" but "is not bound by the complaint's legal conclusions." *Id.*

Finally, consideration of a Rule 12(b)(7) motion, which seeks dismissal for failure to join a party deemed indispensable under Federal Rule of Civil Procedure 19, requires "a two-step inquiry: first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration; and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence." *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917–18 (4th Cir. 1999). If a party is indispensable but cannot be joined, dismissal is required. *Id.* The Fourth Circuit has cautioned that this analysis should be "pragmatic" and dismissal "should be employed only sparingly." *Id.*

## ARGUMENT

Although the Trebuchet Corporate Defendants move to dismiss Plaintiff's Second Amended Complaint under three different provisions of Rule 12, each argument is a response to the same underlying issue: Plaintiff's attempt to circumvent Pennsylvania's statutory insurer liquidation process. As explained more fully below, Plaintiff's claims against the Trebuchet Corporate Defendants are not Southern's to assert. Under Pennsylvania law, as elsewhere, only Bedivere's Liquidator is authorized to bring them.

Even if Plaintiff's claims were not so foreclosed, however, dismissal would still be proper. The SAC fails to make out a *prima facie* case for this Court's personal jurisdiction over the Trebuchet Corporate Defendants. And, because Plaintiff seeks to assert claims on Bedivere's behalf, litigate Bedivere's rights and obligations under its insurance policies, and/or attach Bedivere's assets, Bedivere's Liquidator is an indispensable party to this litigation. If the Liquidator cannot be joined, Plaintiff's suit should be dismissed.

## I. PLAINTIFF'S CLAIMS IMPERMISSIBLY INTRUDE UPON THE EXCLUSIVE AUTHORITY OF BEDIVERE'S LIQUIDATOR.

It is axiomatic that the liquidator of an insolvent insurer "represents both the company and its creditors" and is broadly authorized to "exercise the rights of…the insurer's 'policyholders, the beneficiaries under the policies, the creditors, and the public interest in the enforcement of the insurance law applicable to the policies of an insolvent company.'" 1 Couch on Ins. § 5:12 (2021) (attached hereto as Exhibit A). As representative to both the insolvent insurer and those with claims against it, a liquidator may "maintain such suits as the directors of the insolvent insurer might have maintained" and "sue on behalf of the insolvent insurer's policyholders and creditors where the injuries suffered are to all policyholders (creditors) and where the 'objective' is to increase the assets of the estate of the insolvent insurer." 1 Couch on Ins. § 5:17.  Ex. A.

The question posed by Plaintiff's suit is whether Southern's alleged downstream injuries entitle *Southern*, as a putative Bedivere policyholder, to pursue its own recovery for harm allegedly imposed on Bedivere. The answer is emphatic: "no." Statutory prohibitions, public policy, principles of comity, and a wealth of authority all confirm that Plaintiff's claims against the Trebuchet Corporate Defendants are foreclosed by Bedivere's on-going liquidation. Because Plaintiff's causes of action against the Trebuchet Corporate Defendants are (i) predicated on purported injuries to Bedivere, (ii) affect all creditors and policyholders equally, and/or (iii) implicate Bedivere's assets, they belong solely to Bedivere's Liquidator. In other words, Plaintiff's pursuit of his claims can only proceed at the expense of Bedivere's estate, Plaintiff's fellow policyholders and creditors, and the public at large.

### A. Because Pennsylvania and South Carolina are "reciprocal states," South Carolina courts must defer to Pennsylvania's liquidation process.

Plaintiff's suit implicates two of the primary policy rationales underlying Pennsylvania's insurer insolvency laws: the "equitable apportionment of any unavoidable loss" and "lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process." 40 P.S. § 221.1. In furtherance of these policies, Pennsylvania bestows liquidators with broad authority; they can hold hearings, compel attendance, subpoena witnesses, administer oaths, collect debts "wherever located," conduct sales of property, and enter into contracts. *Id.*

Such powers would be virtually meaningless, however, if liquidators were not also authorized to engage in the litigation necessary to secure, stabilize, and increase an insolvent insurer's assets. 1 Couch on Ins. § 5:17 (Ex. A). Thus, Pennsylvania liquidators may litigate "any and all suits and other legal proceedings, in this Commonwealth or elsewhere," "institute timely action in other jurisdictions," and pursue "any action which may exist in behalf of the creditors,

6

members, policyholders or shareholders of the insurer against any officer of the insurer, or any other person." 40 P.S. § 221.23.

These provisions, when combined with a statutory prohibition on litigation *against* insolvent insurers, 40 P.S. § 221.26(a), operate as both a sword and a shield, preventing collateral attacks on the liquidated estate while simultaneously allowing receivers to pursue litigation they deem essential to their task. Similar provisions can be found in most states, including South Carolina's Insurance Rehabilitation and Liquidation Act, S.C. Code Ann. § 38-27-10 *et seq.* ("IRLA"). *See* S.C. Code. Ann. § 38-27-30 (noting twin purposes of "equitable apportionment" and "lessening the problems of interstate liquidation"); S.C. Code Ann. § 38-27-400 (detailing similar powers of liquidator); S.C. Code Ann. § 38-27-430 (prohibiting new litigation). Notably, both Pennsylvania and South Carolina expressly acknowledge the crucial role of comity and reciprocity to any successful liquidation process. *Compare* 40 P.S. § 221.55 ("The domiciliary liquidator of an insurer domiciled in a reciprocal state shall be vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books, accounts and other records of the insurer located in this Commonwealth."); S.C. Code Ann. § 38-27-930 ("The domiciliary liquidator of an insurer domiciled in a reciprocal state is…vested by operation of law with the title to all of the assets, property, contracts and rights of action, agents' balances, and all of the books, accounts, and other records of the insurer located in this State.").

In keeping with this spirit of cooperation, South Carolina's IRLA commands that South Carolina courts grant "full faith and credit" to foreign "injunctions against the liquidator or the company or the continuation of existing actions against the liquidator or the company, when the injunctions are included in an order to liquidate an insurer issued pursuant to corresponding provisions in other states." S.C. Code Ann. § 38-27-430; *see also Williams v. Northwestern Sec.*

*Life Ins. Co.*, 307 S.C. 462, 465, 415 S.E.2d 809, 810 (1992) (explaining that, under S.C. Code Ann. § 38-27-430, when "another state under corresponding provisions issues a liquidation order, South Carolina must give full faith and credit to an injunction contained within that order.").

### B. The March 2021 Liquidation Order grants the Liquidator exclusive authority to pursue any and all claims on behalf of Bedivere and its creditors.

Bedivere's March 11, 2021 Order of Liquidation, issued by Pennsylvania's Commonwealth Court, falls squarely within the four corners of the "interstate affairs" and "reciprocity" provisions of South Carolina's IRLA. The Order "vests" the Liquidator with all of Bedivere's assets, including any litigation rights, while staying any and all litigation that could infringe upon the company's *res*. Four provisions of the Order are illustrative. First, Paragraph 4 states that:

> The Liquidator is vested with title to all property, assets, contracts and rights of action (assets) of Bedivere of whatever nature and wherever located, whether held directly or indirectly, as of the date of filing of the Petition for Liquidation.

3/11/21 Order (attached as <u>Exhibit B</u>).[2] Second, Paragraph 13 states that:

> Unless the Liquidator consents thereto in writing, no action at law or in equity, including, but not limited to, an arbitration or mediation, the filing of any judgment, attachment, garnishment, lien or levy of execution process against Bedivere or its assets, shall be brought against Bedivere or the Liquidator or against any of their employees, officers or liquidation officers for acts or omissions in their capacity as employees, officers or liquidation officers of Bedivere or the Liquidator, whether in this Commonwealth or

---

[2] It also states that "[a]ll assets of Bedivere are hereby found to be *in custodia legis* of this Court and this Court asserts jurisdiction as follows: (a) *in rem* jurisdiction over all assets wherever they may be located and regardless of whether they are held in the name of Bedivere or in any other name; (b) exclusive jurisdiction over all determinations as to whether assets belong to Bedivere or to another party; (c) exclusive jurisdiction over all determinations of the validity and amounts of claims against Bedivere; and (d) exclusive jurisdiction over the determination of the priority of all claims against Bedivere." Ex. B, 3/11/21 Liquidation Order, ¶ 4.

> elsewhere, nor shall any such existing action be maintained or further prosecuted after the effective date of this Order.

*Id.* at ¶ 13. Third, that same paragraph also stays all litigation against Bedivere:

> All above-enumerated actions currently pending against Bedivere in the courts of the Commonwealth of Pennsylvania or elsewhere are hereby stayed; relief sought in these actions shall be pursued by filing a proof of claim against the estate of Bedivere pursuant to Section 538 of Article V, 40 P.S. § 221.38.

*Id.* Fourth, and finally, Paragraph 14 broadly enjoins any legal action implicating Bedivere's

assets:

> All secured creditors or parties, pledges, lienholders, collateral holder or other persons, claiming secured, priority or preferred interest in any property or assets of Bedivere, are hereby enjoined from taking any steps whatsoever to transfer, sell, assign, encumber, attach, dispose of, or exercise, purported rights in or against any property or assets of Bedivere except as provided in Section 543 of Article V, 40 P.S. § 221.43.

*Id.* at ¶ 14. Together, these provisions confirm the Liquidator's possession of any and all "assets"

of Bedivere, including "rights of action" necessary to secure or recover Bedivere's assets for the

benefit of its creditors. If, as Plaintiff alleges, the Trebuchet Corporate Defendants contributed to

Bedivere's insolvency, then the Liquidator (and only the Liquidator) can seek to claw back any

misappropriated funds. Plaintiff's right to these claims and that recoupment is no greater than that

of any other creditor or policyholder.

### C. Plaintiff's claims against the Trebuchet Corporate Defendants intrude upon the exclusive authority of Bedivere's Liquidator.

As a general principle, the only liquidation-related claims *not* subsumed by a liquidator's

authority are those that are "separate and distinct" from the harm "suffered by the company or

policyholders as a whole." *Koken v. Fidelity Mut. Life Ins. Co.*, 803 A.2d 807, 822 (Pa. Commw.

2002). A review of Plaintiff's claims against the Trebuchet Corporate Defendants, set forth below,

confirms they are neither separate nor distinct.

9

     **i.**    **Each of Plaintiff's claims against the Trebuchet Corporate Defendants are derivative of harm to Bedivere and/or common to all creditors.**

In **Count IV** of the SAC, which asserts a claim for fraudulent conveyance, Plaintiff alleges "[t]he Trebuchet Defendants *caused the assets of Bedivere*…to become subject to the liabilities and obligations of EFIC, Lamorak, and Potomac II," thus "leaving Southern's Insurance Policies without support needed to pay the claims of Southern." SAC, at ¶ 140 (emphasis added). Elsewhere, Plaintiff contends that Bedivere's merger "*caused Bedivere* to incur obligations…without receiving in return equivalent value." *Id.* (emphasis added). This "fraudulent incurrence *by Bedivere* of obligations of the merged companies" could only have damaged Bedivere's policyholders vicariously, "by making it impossible for Bedivere to satisfy its obligations."[3] *Id.* at ¶ 151 (emphasis added).

**Count VII** of Plaintiff's SAC, alleging civil conspiracy, is similarly derivative and common to all policyholders. Plaintiff alleges that the Trebuchet Corporate Defendants "agreed to and did, in fact, act in concert with the intent of *causing Bedivere* to incur liabilities without receiving equivalent value, thereby *impairing Bedivere's ability* to compensate its claimants" and/or "*encumber[ing] Bedivere* with liabilities, resulting in Bedivere's liquidation." *Id.* at ¶ 161 (emphases added). Only by sending Bedivere into liquidation did this alleged conspiracy injure Plaintiff—along with any other creditors whose claims went unpaid. *Id.* at ¶ 162.

---

[3] Based on these allegations, Plaintiff asks that the court "attach" the "assets owned by Bedivere prior to the merger" (*id.*), a request that brazenly contravenes the Commonwealth Court's Liquidation Order, which specifically prohibits any "attachment" of Bedivere's assets. Ex. B, 3/11/21 Liquidation Order at ¶ 14 (prohibiting "[a]ll secured creditors or parties, pledges, lienholders, collateral holder or other persons, claiming secured, priority or preferred interest in any property or assets of Bedivere, are hereby enjoined from taking any steps whatsoever to transfer, sell, assign, encumber, *attach*, dispose of, or exercise, purported rights in or against *any property or assets of Bedivere*") (emphasis added).

**Count IX**, which sounds in negligence, alleges that the Trebuchet Corporate Defendants acted "unreasonably" by (i) "*causing Bedivere* to incur liabilities," (ii) "reviewing and evaluating *Bedivere's existing and future liabilities* at the time of the merger," (iii) "providing inaccurate information to the public and Pennsylvania Insurance Commission *regarding Bedivere's liabilities* and suppressing information about the merger to the public and policyholders," and (iv) "*causing the transfer of liabilities to Bedivere*, which was insufficiently capitalized to support the liabilities of the merged companies, leaving Bedivere with insurance liabilities that were not funded or supported by sufficient assets." *Id.* at ¶ 169(a)-(d) (emphases added). In Plaintiff's own words, the Trebuchet Corporate Defendants' alleged negligence "*caused Bedivere's liquidation*" and, only by extension, Bedivere's "inability to provide Southern the defense and indemnification it was obliged to provide." *Id.* at ¶ 170 (emphasis added).

In **Count XV**, Plaintiff seeks an "accounting" of Bedivere's and defendants' finances, "requir[ing] the Trebuchet Defendants to provide the Receiver with a complete and accurate accounting of all transfers of value, whether monetary or otherwise, *from Bedivere* and incurrence *by Bedivere* of obligations to or for the benefit of the Trebuchet Defendants or their affiliates and of all dilution of assets of Bedivere." *Id.* at ¶ 206 (emphases added).

Even those causes of action that might typically be presumed to be individualized in nature—like Plaintiff's breach of contract (**Count XIII**) or tortious interference with contractual relations (**Count XV**) claims—are, as pled, derivative. Plaintiff's breach of contract claim does not allege that the Trebuchet Corporate Defendants issued Southern's insurance policy or took any action related to coverage. Rather, Plaintiff asserts that the contract was breached by "*Bedivere's* inability to pay" which was, itself, "the direct result of . . . the incurrence of obligations prior to and as part of the Transaction and/or the Merger." *Id.* at ¶ 200. Similarly, Plaintiff asserts that the

11

Trebuchet Corporate Defendants "interfered" with Southern's insurance policy (**Count XV**) only indirectly, by imposing "obligations" that resulted in Bedivere's insolvency and, later, non-payment of Southern's insurance claims. *Id.* at ¶ 211.

>    ii.    **Plaintiff's claims intrude on the Liquidator's exclusive authority and must be dismissed.**

Time and again state and federal courts around the country have held that the liquidators of insolvent insurers possess sole and exclusive authority to pursue claims against third-party tortfeasors for alleged harms sustained by an insolvent insurer. This deference is sometimes couched in terms of comity, other times as an issue of standing, but the common denominator is that creditors of an insolvent insurer are not permitted to end-run liquidation proceedings by asserting claims belonging to a statutory liquidator.[4] *Barnhardt Marine Ins., Inc. v. New England Intern. Sur. of America, Inc.*, 961 F.2d 529, 532 (5th Cir. 1992) (holding that, "in granting the liquidator the power to gather the assets properly within the liquidation, Louisiana law vests the concomitant power to pursue assets in the hands of non-insurers" and thus "[t]he Commissioner is the appropriate party to bring all such claims" and "the [liquidator's] state court is the appropriate forum to exercise jurisdiction over all such claims."); *Four Star Ins. Agency, Inc. v. Hawaiian Elec. Indus., Inc.*, 974 P.2d 1017, 1025 (Hawai'i 1999) (insurance commissioner has "exclusive standing" to assert Plaintiffs' claims "arising out of" the insolvency of three related insurers); *Corcoran v. Frank B. Hall & Co., Inc.*, 149 A.D.2d 165, 171 (N.Y. App. Dep't 1989) (holding that the superintendent of insurance, as liquidator of an insolvent insurance company, has "paramount

---

[4] Similar logic has been applied in the context of traditional derivative securities actions. *See Avikian v. WTC Fin. Corp.*, 98 Cal. App. 4th 1108, 1116 (Cal. App. 4th 2002) (dismissing claims based on mismanagement in favor of liquidator where plaintiff's losses "were merely incidental to the alleged harm inflicted upon World *and all its shareholders.*"); *Boedeker v. Rogers*, 746 N.E.2d 625, 636 (Ohio App. 8th Dist. 2000) (liquidator must be granted exclusive authority to pursue claims on behalf of insolvent insurer).

and exclusive standing" to assert claims on behalf of the insurance company, its policyholders and creditors against third parties).

Many of these decisions address claims almost identical to Plaintiff's here. In *A.P.I., Inc. v. Home Ins. Co.*, 706 F.Supp.2d 926 (D. Minn. 2010), for instance, an asbestos trust asserted a variety of similar claims—including fraudulent transfer and tortious interference—against Zurich American Insurance Company, Zurich-American Insurance Company of Illinois (together, "Zurich"), and Steadfast Insurance Company, based on Zurich's relationship with Home Insurance Company ("Home"), an insolvent insurer undergoing liquidation in New Hampshire. *Id.* at 929. The *A.P.I.* plaintiff alleged that Zurich had contributed to Home's insolvency through a pattern of mismanagement and misappropriation and thus was "liable for Home's conduct and for Home's obligations under the Home policies." *Id.* Based on substantially similar statutes and orders to those of Pennsylvania and the Commonwealth Court, respectively, the district court dismissed the plaintiff's claims for fraudulent transfer and tortious interference. The New Hampshire liquidation order, it explained, "vest[ed] the Liquidator with exclusive authority" to pursue such claims and prohibited plaintiffs from "recover[ing] damages relating to Home's res, which the Liquidator has sole authority to protect and manage."[5] *Id.* at 937, 939.

In reaching its conclusion, the *A.P.I.* court identified two New York state court decisions addressing the same issue—and the same insurer. In *Brooklyn Union Gas Company v. Century*

---

[5] To the extent Plaintiff argues that his fraudulent conveyance cause of action is not technically "derivative" because it alleges an injury to creditors rather than Bedivere, it is nonetheless "common to all policyholders" rather than "personal to a particular claimant" and thus equally foreclosed. *A.P.I.*, 706 F. Supp. 2d at 937 (collecting cases). Indeed, as in *A.P.I.*, "the statutory language and the provisions of the Liquidation Order show that [Bedivere's] Liquidator has the exclusive right to bring a fraudulent transfer action on behalf of [Bedivere's] creditors and policyholders." *Id.* at 936; *see also* 40 P.S. § 221.28 (detailing liquidator's authority to police fraudulent transfers).

*Indemnity Company*, No. 403087/2002, 2005 N.Y. Slip Op. 30325 (N.Y. Sup. Ct. Jan. 10, 2005) (attached as <u>Exhibit C</u>), the trial court dismissed a policyholder's claims against Zurich that likewise alleged a "course of conduct" that "led to the undercapitalization of Home and ultimately to its liquidation and apparent inability to make good on [the plaintiff's] insurance policy." *Id.* at *3. Citing the same statutory language as the court in *A.P.I.*, the New York court explained that allowing the plaintiff's claim to proceed "would undermine the very stay that was instituted by the court ordering the liquidation" and thus the principles of reciprocity imposed by New York law. *Id.* at *6-7. Similarly, in *Consolidated Edison Company v. American Home Insurance Company*, No. 600527/01, Slip Op. (N.Y. Sup. Ct. Mar. 29, 2005), the trial court, citing *Brooklyn Union*, dismissed the plaintiff's claim that Zurich was Home's alter ego and thus "'legally responsible for Home's coverage obligations to plaintiff.'" *Id.* at 2 (attached as <u>Exhibit D</u>). Like the *Brooklyn Union* court, the *ConEd* court looked to New Hampshire law and, affording it "full faith and credit," determined that the foreign liquidation order foreclosed the plaintiff's claim. *Id.* at 3.

These decisions reflect a practical reality: without exclusivity, every liquidation would devolve into a veritable free-for-all, with putative creditors competing to rifle through the pockets of third-party debtors. *See Koken*, 803 A.2d at 822 (noting the need for exclusive authority in insurer rehabilitation because "separate actions in different forums may precipitate a 'race to the courthouse.'"); *Four Star*, 974 P.2d at 1024 (noting that "such a system" would "encourage[ ] creditors to race to the courthouse" frustrating "orderly and equitable" distribution.); *Matter of Liquidation of Am. Mut. Liability Ins. Co.*, 632 N.E.2d 1209, 1214 (Mass. 1994) ("Without the exclusive right in the receiver to settle common claims, resulting litigation could be endless."). Put differently, in order to prevent the liquidation process from "degenerat[ing] into cacophony and

disarray, there can be only one conductor." *Boedeker*, 746 N.E.2d at 636. Here, as in each of the decisions discussed above, the baton belongs to Bedivere's Liquidator, not Plaintiff.

## II. THIS COURT LACKS PERSONAL JURISDICITION OVER THE TREBUCHET CORPORATE DEFENDANTS.

A federal court's personal jurisdiction over a nonresident defendant "can be either specific or general." *Belimed, Inc. v. Bleecker*, No. 2:22-cv-00891, 2022 WL 939819, at \*3 (D.S.C. Mar. 29, 2022). Plaintiff does not assert that the Trebuchet Corporate Defendants are subject to South Carolina's general jurisdiction, however, relying instead on specific jurisdiction under the state's long-arm statute, S.C. Code Ann. § 36-2-803. *See* SAC, at ¶ 19. A plaintiff seeking to establish specific jurisdiction over a foreign corporation typically must show that: "'(1) such jurisdiction is authorized by the long-arm statute in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment.'" *Receiver for Rex Venture Group, LLC v. Banca Comerciala Victoriabank SA*, 843 Fed. App'x 485, 490 (4th Cir. 2021) (citation omitted). But, because "South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process," this first step "is collapsed into the second, and the only inquiry before the court is whether the due process requirements are met." *Christian World Adoption, Inc. v. Hawley & Assocs., LLC*, No. 2:12–cv–2126, 2012 WL 13005827, at \*1 (D.S.C. Nov. 20, 2012). Because Plaintiff fails to provide any facts tying the Trebuchet Corporate Defendants to South Carolina, his allegations fail to establish jurisdiction under any standard.

### A. Plaintiff does not allege any facts establishing personal jurisdiction over the Trebuchet Corporate Defendants.

Initially, Plaintiff's Complaint does not establish specific jurisdiction over the Trebuchet Corporate Defendants based on any of the eight factors set forth in South Carolina's long-arm

15

statute. The Trebuchet Corporate Defendants are not alleged to have "transact[ed] business" in South Carolina, to have committed "tortious acts in whole or in part" in South Carolina, to have "caus[ed] injury" in South Carolina "while regularly doing or soliciting business or while engaging in a persistent course of conduct or deriving substantial revenue from goods or services," to have owned property in South Carolina, to have produced goods with the "expectation that those goods [would] be used" in South Carolina, to have "contracted to supply services" in South Carolina, to have "ent[ered] into a contract to be performed in whole or part" in South Carolina, or to have "contracted to insure persons, property, or risk" located in South Carolina. S.C. Code Ann. § 36-2-803. Without some direct nexus between Plaintiff's claims and the Trebuchet Corporate Defendant's activities, Plaintiff cannot make a *prima facie* showing of personal jurisdiction.

### B. Plaintiff's alter ego-related claims do not establish personal jurisdiction over the Trebuchet Corporate Defendants.

To the extent Plaintiff intends to argue that personal jurisdiction over the Trebuchet Corporate Defendants is proper based on alter ego or alter ego-adjacent theories, those theories come with a significant caveat: a corporation must "be looked upon as a legal entity until sufficient reason to the contrary appears" and, even then, the doctrines should "not to be applied without substantial reflection." *Drury Dev. Corp. v. Foundation Ins. Co.*, 380 S.C. 97, 101, 668 S.E.2d 798, 800 (2008).

In the context of *jurisdictional* veil-piercing, "sufficient reason" incorporates four elements: "(1) common ownership; (2) financial independence; (3) degree of selection of executive personnel and failure to observe corporate formalities; and (4) the degree of control over marketing and operational policies.'"[6] *J.R.*, 470 F. Supp. 3d at 548 (citing *Builder Mart of Am., Inc. v. First*

---

[6] Count XI of the SAC also refers to "single business enterprise liability," which was recently adopted by the South Carolina Supreme Court in *Pertuis v. Front Roe Restaurants, Inc.*,

*Union Corp.*, 349 S.C. 500, 511, 563 S.E.2d 352, 358 (Ct. App. 2002));[7] *Wright*, 2019 WL 3344040, at *5 (same). Importantly, "it is essential that all four factors be present with sufficient factual specificity to confer jurisdiction[.]" *J.R.*, 470 F. Supp. 3d at 548; *see also id.* at 549 (holding that plaintiffs' failure to establish that the defendant ignored corporate formalities was "alone…fatal to their [alter ego] arguments.").[8]

Plaintiff's alter ego allegations fall far short of the mark. Initially, Plaintiff does not allege that the Trebuchet Corporate Defendants failed to observe corporate formalities, an essential component of any alter ego claim. *Id.* at 549. And what Plaintiff *does* allege is indiscriminate and conclusory. Predicating his allegations on "information and belief," Plaintiff paints all defendants with the same broad brush, ignoring any factual or structural differences among (i) the unrelated

---

423 S.C. 640, 655, 817 S.E.2d 273, 278 (2018). Perhaps because the doctrine is relatively new in origin, research turned up no cases where South Carolina courts relied on the theory to establish specific jurisdiction. The only courts of this district known to have addressed the issue both concluded that the doctrine applies "only to liability and cannot be relied on to create personal jurisdiction." *Toney v. SSC Sumter East Operating Co., LLC*, No. 3:19-3226, 2020 WL 12744577, at *6 (D.S.C. Apr. 29, 2020) (citing *Wright v. Waste Pro USA Inc.*, No. 2:17-CV-02654, 2019 WL 3344040, at *11 (D.S.C. July 25, 2019)).

[7] The Court of Appeals' decision in *Builder Mart* was overruled on other grounds by *Farmer v. Monsanto Corp.*, 353 S.C. 553, 579 S.E.2d 325 (2003).

[8] *See also Roper v. TAP Pharm. Prods., Inc.*, No. 6:11–2204, 2012 WL 2974912, at *4 (D.S.C. Jul. 20, 2012) (finding no personal jurisdiction where, "other than conclusory allegations regarding Abbott directing TAP's operations, there are no factual allegations or evidence that support Plaintiff's contention that Abbott was the agent, instrumentality, or alter ego of TAP."); *Fancy That! Bistro & Catering, LLC v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-2382, 2021 WL 4804974, at *4 (D.S.C. Oct. 14, 2021) (rejecting personal jurisdiction because "South Carolina courts have consistently recognized that it is difficult to plead that one entity is the alter ego of another and [plaintiff] has not set forth facts to meet the elements of such a claim"). *Salley v. Heartland-Charleston of Hanahan, SC, LLC*, 2:10–cv–00791, 2010 WL 5136211, at *4 (D.S.C. Dec. 10, 2010) (declining personal jurisdiction and noting that, "[e]ven if this allegation was sufficient to demonstrate a prima facie case for failure to observe corporate formalities, which it almost certainly is not, these are merely 'conclusory allegations' not supported by 'specific facts'"); 18 CORPUS JURIS SECUNDUM, Corporations § 39 (2022) (a plaintiff seeking to establish personal jurisdiction based on veil piercing "must plead facts sufficient to justify disregard of the corporate entity" because "conclusory allegations of control are not sufficient").

OneBeacon and Trebuchet companies or (ii) the three separate Trebuchet Corporate Defendants. *See* SAC, at ¶ 178. In doing so, he eschews concrete facts about the Trebuchet Corporate Defendants' actual corporate structure in favor a laundry list of factors a court might consider as part of a hypothetical veil piercing analysis. *See id.*; *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015) (rejecting "naked allegations" that "'all of the corporate subsidiaries are 'dominated by, and are alter egos of'" their corporate parents and dismissing such allegations as mere "legal conclusions" insufficient to satisfy alter ego standard); *Essex Ins. Co. v. Miles*, No. 10–3598, 2010 WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010) (dismissing allegations based on "information and belief" that defendant "failed to observe corporate formalities, intermingled funds, used corporate property for personal expenses, left [a corporation] grossly undercapitalized, and used [the corporation] as a 'façade' or 'alter ego'" as "merely 'a formulaic recitation of the elements of a cause of action' for piercing the corporate veil").[9]

Moreover, because Bedivere is not a party to this action, Plaintiff's alter ego allegations are also deficient as a matter of South Carolina law. As the South Carolina Supreme Court explained in *Drury Development Corp.*, "South Carolina law is clear that plaintiffs attempting to pierce the corporate veil *must state a claim against the corporate entity* in order to proceed on a veil piercing theory." *Drury Dev. Corp.*, 380 S.C. at 103-04, 668 S.E.2d at 801 (emphasis added); *id.* at 104, 668 S.E.2d at 802 (explaining that, "*so long as* the plaintiff has pled facts sufficient to survive a motion to dismiss as to the corporate liability claims and the alter ego claim, the trial court should move forward to determination of both matters") (emphasis added). Bedivere's

---

[9] *See also Oakley v. Coast Professional, Inc.*, No. 1:21-00021, 2021 WL 4806730, at *5 (S.D. W.Va. Oct. 14, 2021) (rejecting "conclusory" alter ego allegations and citing treatise for proposition that "[c]ourts are increasingly unwilling to accept conclusory allegations of alter ego liability").

absence precludes application of any veil-piercing principles and—by extension—personal jurisdiction over Bedivere's alleged alter egos.

### III.    BEDIVERE, THROUGH ITS LIQUIDATOR, IS AN INDISPENSIBLE PARTY UNDER FEDERAL RULE OF CIVIL PROCEDURE 19.

As discussed *passim*, Plaintiff seeks to litigate Bedivere's claims for *Southern's* benefit, in Bedivere's absence. Even if this were somehow permitted by South Carolina and Pennsylvania law—it is not—it remains a *practical* impossibility: Bedivere is simply too intertwined with this controversy to remain on the sidelines. Pursuant to Federal Rule of Civil Procedure 19, Bedivere's Liquidator must be joined and, if he cannot be, this case must be dismissed.

Initially, analysis under Rules 12(b)(7) and 19 involves "a two-step inquiry: first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration; and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence." *Teamsters Local Union No. 171*, 173 F.3d at 917–18. In essence, the first prong requires a court to assess the legal implications of a non-party's absence; the second prong requires it to draw on "equity and good conscience" to determine if a plaintiff's suit should be allowed to continue despite that absence.

From a legal standpoint, Bedivere's presence is clearly required. Two of Plaintiff's claims implicate rights and obligations under an alleged contract to which Southern and Bedivere (but not the Trebuchet Corporate Defendants) are parties—Plaintiff asserts both declaratory judgment and breach of contract claims related to Southern's insurance policy with Bedivere. And, when a claim sounds in contract, "'precedent supports the proposition that a contracting party is the paradigm of an indispensable party[.]'" *Gunvor SA v. Kayablian*, 948 F.3d 214, 221 (4th Cir. 2020); *Victoria Select Ins. Co. v. D. Ortiz Co., Inc.*, No. 16-cv-165, 2016 WL 9308330, at *2 (E.D. Va. May 26,

2016) (insurer was an indispensable party to declaratory judgment action addressing its insurance obligations).[10]

Second, Plaintiff seeks to hold the Trebuchet Corporate Defendants liable for the actions of Bedivere, a subsidiary. "[W]hen a plaintiff seeks to hold a parent company liable for the conduct of the parent's subsidiary, the subsidiary is a necessary and indispensable party under Rule 19." *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001); *Bailey v. Deutsche Bank Trust Co.*, No. DKC 13–0144, 2013 WL 2903498, at *4 (D. Md. June 12, 2013) (subsidiary "would seem to be indispensable" in action seeking to hold parent liable for subsidiary's actions).[11]

Third, Plaintiff's assertion of derivative claims on Bedivere's behalf clearly implicates Bedivere's interests because any moneys recovered (or assets attached) on those claims belong, first and foremost, to Bedivere itself. *See Kelly v. Linn*, No. 20-cv-00334, 2021 WL 4198392, at *5 (N.D. Okla. Sept. 15, 2021) (holding that, where "derivative claims in this matter actually

---

[10] *See also OneCommand, Inc. v. Beroth*, No. 1:12–cv–471, 2012 WL 3755614, at *2 (S.D. Ohio Aug. 29, 2012) ("[i]n general, the indispensable parties in a breach of contract action are the parties to the contract"). This takes on added significance because, as Plaintiff has acknowledged, Plaintiff has submitted a claim under the same policy in the Bedivere liquidation. *See* Docket No. 1-5. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000) (finding insured to be necessary party where parallel litigation could result in conflicting rulings on coverage).

[11] Plaintiff's alter ego claim does not change this conclusion. Even assuming Bedivere *was* an alter ego of the Trebuchet Corporate Defendants at some point (it was not), that is no longer the case now—as of March 11, 2021, the Liquidator has exclusive possession and control over Bedivere's "property, assets, contracts, and rights of action." *See* Ex. B, 3/11/21 Liquidation Order, ¶ 4. Although the court in *Drury Development Corp.* did not address whether the liquidator's presence as a party was indispensable, as a practical matter *Plaintiff's* alter ego claim indisputably requires the Liquidator's participation. After all, Plaintiff intends to litigate issues related to Bedivere's corporate form, its contracts, and its putative injuries at the hands of the Trebuchet Corporate Defendants. The Liquidator's custody over the materials necessary to prove Plaintiff's claims (were they capable of proof), the claims Plaintiff asserts, and assets Plaintiff seeks to attach only confirms his indispensability.

belong to [a non-party], the court cannot afford complete relief without [the non-party]" and that non-party "clearly has an interest in the litigation and disposing of the action in its absence would impede its ability to protect that interest."); *Schiff v. ZM Equity Partners, LLC*, No. 19-cv-4735, 2020 WL 5077712, at *13 (S.D.N.Y. Aug. 27, 2020) (where plaintiff "seeks to pursue a derivative action on behalf of non-party [LLC], 'the LLC itself is a necessary party under Rule 19 of the Federal Rules of Civil Procedure'"); *Kinney v. Bartholomew*, No. 5:20-cv-5083, 2020 WL 4760152, at *3 (W.D. Ark. Aug. 17, 2020) (noting Eighth Circuit rule that "in a derivative action commenced on behalf of an entity, the entity itself is a necessary party under Rule 19"); *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 650 (S.D.N.Y. 2008) (holding that non-party was a "necessary party under Rule 19(a) since it has an obvious interest in the derivative claims raised on its behalf, and would be unable in practice to protect that interest if not joined").

Fourth, because Plaintiff seeks to assert claims on behalf of Bedivere, the Trebuchet Corporate Defendants face a real risk of multiple obligations should the Liquidator later seek recovery based on the same claims. *Cf. Tribune Co. v. Swiss Reinsurance Am. Corp.*, No. 02 C 4772, 2003 WL 22282465, at *6 (N.D. Ill. Sept. 30, 2003) (describing order in Pennsylvania liquidation stating that "a reinsurer's payment to a third-party does not diminish the reinsurer's obligation to [the insolvent insurer's] Estate.").

For many of the same reasons described above, allowing Plaintiff's claims against the Trebuchet Corporate Defendants to move forward in the Liquidator's absence will substantially prejudice Bedivere, its creditors, and the Trebuchet Corporate Defendants. *Gunvor SA*, 948 F.3d at 221 (noting that "prejudice" prong of Rule 19(b) "speaks to many of the same concerns addressed by necessity analysis under Rule 12(a)(1)(B)") (citations omitted). Further, given the

21

highly-imbricated nature of Plaintiff's and Bedivere's rights—as alleged, they are, in many ways, indistinguishable—it is difficult to see how this litigation and any/or resulting award could be tailored to protect the interests of all parties, including Bedivere's. *Id.* (stating that court "could not see how the court could grant the judgment [plaintiff] requests without prejudicing [contracting non-party]"). This is most obvious in Count IV of the SAC, which seeks to remedy harm allegedly inflicted on Bedivere by "attaching" *Bedivere's* assets. SAC, at ¶ 151(1). Finally, to the extent Plaintiff's primary goal is recouping unpaid insurance claims, the Bedivere Liquidation and Pennsylvania's Commonwealth Court have already provided Plaintiff with an alternative to this litigation—as Plaintiff has reported to the state court, Plaintiff has an unresolved claim pending in that proceeding that it filed in December 2021. *See* Docket No. 1-5. Given all of the above, it is clear that Bedivere's Liquidator must be joined and, if he cannot be, then the claims against the Trebuchet Corporate Defendants must be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, the Trebuchet Corporate Defendants respectfully request that this Court grant their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and/or 12(b)(7) and dismiss all claims against them.

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

By: s/Elizabeth H. Black
Robert Y. Knowlton, D.S.C. No. 2380
Elizabeth H. Black, D.S.C. No. 10088
1201 Main Street, 22nd Floor (29201)
Post Office Box 11889
Columbia, SC 29211-1889
(803) 779-3080
bknowlton@hsblawfirm.com
eblack@hsblawfirm.com

-and-

**STRADLEY RONON STEVENS & YOUNG, LLP**
Jeffrey D. Grossman, PA ID No. 78337
Spencer R. Short, PA ID No. 322037
Applications for admission *pro hac vice* forthcoming
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8061
jgrossman@stradley.com
sshort@stradley.com

*Attorneys for Defendants Trebuchet Investments Limited, Trebuchet Group Holdings Limited (f/k/a Armour Group Holdings Limited), and Trebuchet US Holdings, Inc.*

April 29, 2022
Columbia, South Carolina